**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| JOHN W. BIDDLE, | : | |
| | : | |
| Petitioner | : | Civ. Action No. 15-2058 (RMB) |
| | : | |
| v. | : | OPINION |
| | : | |
| STEPHEN D'ILIO, et al., | : | |
| | : | |
| Respondents | : | |
|  | : | |

RENÈE MARIE BUMB, CHIEF UNITED STATES DISTRICT JUDGE

This matter comes before the Court upon Petitioner John W. Biddle's

("Petitioner") amended petition for a writ of habeas corpus under 28 U.S.C. § 2254,

challenging his 2008 New Jersey state court conviction.  (Am. Pet., Dkt. No. 19 at 6-

27.)  Respondents filed an answer in opposition to habeas relief.  (Answer, Dkt. No.

26.)  Petitioner filed a reply brief.  (Reply Brief, Dkt. No. 38.)  For the reasons set

forth below, the Court denies the amended petition for writ of habeas corpus.

## I.    PROCEDURAL HISTORY

Petitioner was charged in Atlantic County Indictment #07-03-0485 with

kidnapping, N.J.S.A. 2C:13-1b (Counts 1 and 2); carjacking, N.J.S.A. 2C:15-2a(2),

(4) (Counts 3, 4, 5, 6); robbery, N.J.S.A. 2C:15-1 (Counts 7 and 8); possession of a

weapon for an unlawful purpose. N.J.S.A. 2C:39-4d (Count 9); unlawful possession

of a weapon, N.J.S.A. 2C:39-5d (Count 10); possession of heroin, N.J.S.A. 2C:35-

10a(1) (Count 11); and possession of a weapon by a convicted person, N.J.S.A. 2C:39-7 (Count 12).  (Ex. 1, Dkt. No. 26-2.)  After trial by jury, on May 29, 2008, Petitioner was convicted on all counts that were submitted to the jury, including Counts 1, 3, 5, 6, 7, 9, 10 and 11.  (Ex. 2, Dkt. No. 26-3.)  The trial court sentenced Petitioner to an aggregate term of imprisonment for life without parole.  (*Id.*)  On January 10, 2011, the Appellate Division affirmed the convictions and remanded the case for technical corrections to the judgment of conviction.  (Ex, 11, Dkt. No. 26-12.)  On May 19, 2011, the New Jersey Supreme Court denied review of the Appellate Division's judgment.  (Ex. 12, Dkt. No. 12-13.)  Petitioner sought post-conviction relief, but his petition was denied on December 20, 2012.  (Ex.16, Dkt. No. 26-17.)  The Appellate Division affirmed the PCR court, and the New Jersey Supreme Court denied certification on February 11, 2015.  (Ex. 20, Dkt. No. 26-21; Ex. 24, Dkt. No. 26-25.)

Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, (Dkt. No. 1), superseded by an amended petition (Dkt. No. 17), and then he sought a stay to exhaust state court remedies (Dkt. No. 12), which this Court granted (Dkt. No. 14.)  Upon exhaustion of his state court remedies, Petitioner filed an amended habeas petition (Dkt. No. 19.)  Respondent filed an amended answer (Dkt. No. 26), and Petitioner submitted a reply brief.  (Dkt. No. 38.)  The amended petition is ready for resolution.

## II.  FINDINGS OF FACT BY THE APPELLATE DIVISION

By statute, determinations of factual issues by a state court are presumed to be correct on habeas review.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden to rebut the presumption of correctness by clear and convincing evidence.  (*Id.*) Therefore, the Court presumes the correctness of the following findings of fact by the New Jersey Superior Court, Appellate Division on direct appeal, decided January 10, 2011.

> The crimes for which the jury convicted defendant were committed in the late afternoon and early evening on October 30, 2006.  The victim, N.A., was caring for her two-year-old sister, M.D., while working alone at her family's business in Atlantic City.  Upon leaving the store at 5:30 p.m., N.A. placed M.D. in the backseat of her car. N.A. then returned to the store to lock the front door.  As she arrived back at her car, she saw a man, later identified as defendant, walking next to the car.
>
> N.A. asked defendant if she could help him.  In response, defendant brandished a silver-bladed knife and told N.A. to give him her bag "and he wouldn't have to spill [her blood]."
>
> After N.A. gave defendant her bag, he entered the backseat of the car next to M.D. Defendant then climbed into the front seat and ordered N.A. to drive to Pleasantville, giving her directions to a housing development where defendant ordered N.A. to stop her car and turn off the engine.  There, with a knife still in his hand, defendant ordered N.A. to take off her clothing. "[I]n tears and scared and shaking," N.A. took off her clothing while defendant repeatedly stabbed the front console of the car with his knife.  Defendant then asked N.A. what she thought he should do with her.  In tears, N.A., in an attempt to convince defendant to let her go, lied to defendant that she had been raped at age fourteen and now had AIDS.

Defendant told N.A. to put her clothes back on, but, in a rush to do so, she neglected to put on her underpants, leaving them behind in her car.

After N.A. redressed, defendant told her to start the car and return to Atlantic City. N.A. drove to an apartment building parking lot in Atlantic City, where defendant ordered the victims out of the car.  Defendant then drove away with N.A.'s car.

N.A. encountered a pedestrian, who helped her to a store, where she called 9-1-1. When Atlantic City Police Officer Andrew Leonard responded to this 9-1-1 call at approximately 6:30 p.m., he was met by the victim, N.A., who told him she had been carjacked and kidnapped. N.A. described her assailant as a "black male, approximately twenty-five to thirty years old," who was wearing a black-hooded sweatshirt.  N.A. also informed Leonard that her assailant had stolen her silver Toyota Matrix, and she gave Leonard her license plate number. Officer Leonard broadcasted the description of the suspect and N.A.'s car over the police radio.

At approximately 7:05 p.m., Atlantic City Police Officer Salvatore Rando observed a black male with a dark-hooded sweatshirt carrying a woman's handbag and exiting a silver Toyota Matrix that matched N.A.'s description of her car, including the license plate number. Rando approached defendant with his canine and ordered him to the ground.  Defendant complied and placed the handbag on the ground next to him.

After securing defendant, Officer Rando placed the woman's handbag on his patrol car, at which point he noticed a wallet and jewelry through an open-flap of the handbag. In a search incident to defendant's arrest, Officer Rando recovered a silver folding knife from his right pants pocket and a pair of gray woman's underpants from his waistband.  Defendant was then transported to police headquarters.

N.A. was brought to police headquarters and asked if she would be willing to look at someone who may have been involved in the crime.  After viewing defendant through the two-way mirror, N.A. identified him as the one who had carjacked and kidnapped her, stating, "that's him, that's the guy that did this."  N.A. then identified the purse, wallet, jewelry and underpants recovered from defendant as belonging to her.

After N.A. identified defendant as her assailant and the items of property recovered from him at the time of his arrest as her belongings, two police officers administered Miranda warnings to defendant, and after he agreed to speak with the officers and was confronted with some of the evidence against him, such as N.A.'s underpants, defendant gave a statement, which was the same in most respects as N.A. 's account of the crime.  Defendant admitted that he threatened N.A., forced her into her car, and told her to drive to Pleasantville.  He also admitted that he forced N.A. to undress but claimed it was only to ensure that she was unarmed.

At trial, defendant did not testify and called no witnesses on his behalf.

(Ex. 11, Dkt. No. 26-12 at 3-6.)

## III.  DISCUSSION

### A.  Standard of Law

The standard for granting a state prisoner's federal habeas corpus petition is governed by 28 U.S.C. § 2254(d), as follows:

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Courts perform a two-step analysis under § 2254(d)(1). *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 253 (3d Cir. 2020) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (*en banc*), *cert. denied* 528 U.S. 824 (1999)).  First, courts should "determine what the clearly established Supreme Court decisional law was at the time Petitioner's conviction became final" and "identify whether the Supreme Court has articulated a rule specific enough to trigger 'contrary to' review."  *Id.* at 253 (quoting *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004)).  "The 'clearly established Federal law' provision requires Supreme Court decisions to be viewed through a 'sharply focused lens.'"  *Id.*  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), only if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]"  *Williams*, 529 U.S. at 405-06.

Under the second step of the § 2254(d)(1) analysis, if Supreme Court precedent is not specific enough to trigger contrary review, habeas courts should "evaluate whether the state court unreasonably applied the relevant body of precedent." *Rosen*, 972 F.3d at 253 (quoting *Matteo*, 171 F.3d at 888)). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). For relief under this provision, the state court's decision "evaluated objectively" must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Rosen*, 972 F.3d at 252 (quoting *Matteo*, 171 F.3d at 890)). A habeas court must frame the "relevant question as whether a fairminded jurist could reach a different conclusion." *Shinn v. Kayer*, 141 S. Ct. 517, 524 (2020) or, in other words, whether "every fairminded jurist would disagree" with the state court. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021). Ultimately, "'the petitioner must demonstrate that Supreme Court precedent requires [a] contrary outcome' to the state court decision." *Spanier v. Dir. Dauphin Cnty. Prob. Servs.*, 981 F.3d 213, 228 (3d Cir. 2020) (quoting *Rosen*, 972 F.3d 245, 252 (3d Cir. 2020) (quoting *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999) (en banc)).

Habeas review is also deferential to a state court's determination of facts. 28 U.S.C. § 2254(e)(1) provides that:

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the

> judgment of a State court, a determination of a factual
> issue made by a State court shall be presumed to be
> correct. The applicant shall have the burden of rebutting
> the presumption of correctness by clear and convincing
> evidence.

"The petitioner must show that the state court verdict was based on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached the same conclusion." *Rosen*, 972 F.3d at 252 (3d Cir. 2020) (citing *Campbell v. Vaughn*, 209 F.3d 280, 291 (3d Cir. 2000)). Further, where a state court summarily denies a claim on the merits, a habeas court

> must determine what arguments or theories … could have
> supported, the state court's decision; and then it must ask
> whether it is possible fairminded jurists could disagree that
> those arguments or theories are inconsistent with the
> holding in a prior decision of this Court.

*Harrington v. Richter*, 562 U.S. 86, 102 (2011). Finally, once a habeas petitioner has shown that a constitutional error has occurred, giving proper deference to the state courts under § 2254, the petitioner must establish the error was not harmless by showing it had a "substantial and injurious effect or influence" on the jury's verdict. *Freeman v. Superintendent Fayette SCI*, 62 F.4th 789, 802 (3d Cir. 2023) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

## B. Ground One: Admission of Out-of-Court Identification

Petitioner alleges the prosecution's admission of the victim's out-of-court identification at trial violated his right to due process because the identification procedure was impermissibly suggestive and unreliable. In support of this claim,

Petitioner explains that the trial court held a pretrial hearing on Petitioner's motion to suppress the victim's out-of-court identification.  (Am. Pet., Dkt. No. 19 at 13-14.) Detective Aristizabal, the only witness at the hearing, testified that shortly after the carjacking, N.A. was waiting in an interview room at police headquarters.  He told N.A. the police had just arrested someone who may have been involved in the crime, and he wanted her to see if she could identify the suspect.  He brought N.A. to the room where Petitioner was being held, and she looked at him through a two-way mirror.  Without hesitation, N.A. said, "that is the guy who did this to me."  N.A. had not been shown a photo array prior to this identification, and she was not asked to look at any other individuals.  Detective Aristizabal testified that he did not use another identification procedure because the offense was "fresh." He was unsure whether Petitioner was handcuffed to a rail when N.A. identified him.

Based on these facts, Petitioner challenges the trial court's finding that the identification was not impermissibly suggestive.  Pursuant to the New Jersey Attorney General's 2001 Guidelines, Petitioner contends there should have been a live line-up of individuals closely resembling him.  Petitioner also challenges the Appellate Division's ruling that the "identification was strongly corroborated by the fact that defendant was apprehended less than an hour after the crime in possession of N.A.'s car and other personal belongings and that he gave a confession to the police that was substantially similar to N.A.'s account of the crime."  (Am. Pet., Dkt. No. 19 at 13.)

Petitioner asserts this evidence has nothing to do with whether the out-of-court identification procedure was reliable.

In opposition to this claim, Respondents argue the state courts reasonably determined that N.A.'s out-of-court identification of Petitioner was reliable based on: 1) Petitioner's ability to observe the perpetrator for almost an hour; 2) the identification occurred within an hour of the crimes; 3) Petitioner was arrested in possession of N.A.'s property shortly after the crimes were committed; and 4) Petitioner's confession was consistent with N.A.'s account of the crimes. (Answer, Dkt. No. 26 at 7-8.) In reply, Petitioner cites to the 9-1-1- Police Dispatch Transcript, where Officer Leonard was on the scene when N.A. was speaking to the 9-1-1 dispatcher. Officer Leonard repeated to the dispatcher that N.A. said the perpetrator "has a hood on and she couldn't see his face." (Reply Brief, Dkt. No. 38 at 11-15; Ex. B at 18:37:21, Dkt. No. 38-1 at 6.)[1] On cross-examination at trial, N.A. confirmed that the suspect had a hood over his face. The trial judge did not have the benefit of N.A.'s testimony prior to ruling that the out-of-court identification was admissible.

In further support of his claim, Petitioner replied that the trial judge, at the pretrial hearing, did not have the benefit of N.A.'s trial testimony where she said she remembered Detective Aristizabal asking her if she "would be comfortable identifying who they caught[,] in case he was the guy that did this."

---

[1] The transcript was not provided by Respondents with the state court record, but Petitioner attached a copy to his reply brief.

Petitioner also submits that the following facts weigh against reliability of the out-of-court identification.  At trial, N.A. testified that during the carjacking her attention was on the knife, and her focus was primarily on her sister.  N.A.'s description of the suspect was not consistent with Petitioner, because he is 5'7", not 5'3"; he is 42-years-old, not between 25 and 30-years-old; and he was wearing a black leather coat on the day of his arrest,[2] not a dark-colored hoodie or a navy jacket. N.A. was not called as a witness at the pretrial hearing, which allowed the trial court to speculate about her opportunity to view the suspect before the identification. Petitioner concludes that the identification procedure was impermissibly suggestive, and the State failed to prove the identification was reliable.

### 1.  Clearly Established Supreme Court Precedent

In 2011, when the Appellate Division rejected Petitioner's claim, the Supreme Court decisions in *Neil v. Biggers,* 409 U.S. 188 (1972) and *Manson v. Brathwaite,* 432 U.S. 98 (1977) provided the standard for due process challenges to out-of-court identification testimony.  In *Biggers*, the Supreme Court held that an unnecessarily suggestive out-of-court identification does not, by itself, require exclusion of the evidence.  409 U.S. at 198-99.  Instead, the due process test is "whether under the 'totality of the circumstances' the identification was reliable even though the

---

[2] There is no evidence in the state court record that Petitioner was wearing a black leather coat and not a hoodie on the day of his arrest.

confrontation procedure was suggestive." *Id.* "It is the likelihood of misidentification which violates a defendant's right to due process." *Id.* at 198.

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil*, 409 U.S. at 199–200.  In *Manson*, the Supreme Court affirmed the due process analysis announced in *Biggers*, finding it applicable to all out-of-court identification evidence, and held "reliability is the linchpin in determining the admissibility."  432 U.S. 98, 110-14 (1977).  In making the determination of admissibility "the corrupting effect of the suggestive identification" procedure should be weighed against the reliability factors described in *Biggers*.  *Id.* at 114.  In other words, due process does not require exclusion of all testimony regarding impermissibly suggestive out-of-court identifications.

### 2.  Highest Reasoned State Court Determination of the Claim

Habeas review is of the highest reasoned state court determination of the claim, here, the Appellate Division's opinion on direct appeal.  The Appellate Division held, in relevant part:

> the trial court concluded in an oral opinion delivered on April 25, 2008 that the police identification procedure which resulted in N.A.'s identification of defendant was not impermissibly suggestive and, in any event, there was not a very substantial likelihood of irreparable misidentification. We affirm the denial of defendant's motion to suppress

> evidence of N.A.'s identification of him as her assailant for
> substantially the reasons stated by the trial court. We add
> that this identification was strongly corroborated by the fact
> that defendant was apprehended less than an hour after the
> crime in possession of N.A.'s car and other personal
> belongings and that he gave a confession to the police that
> was substantially similar to N.A.'s account of the crime.

(Ex. 11, Dkt. No. 26-12 at 9).

The trial court gave the following reasons:

> the victim called 9-11 at 6:30.  [Petitioner] was, I think,
> stopped at 7:05 and at 7:23 he --is approximately the time
> that the show-up occurred. … it's less than hour or
> certainly within an hour of when … the victim claims
> these things to have happened.

> Now, … I suggest that as a relatively short period of time.
> … [T]he entire police force was put on notice by dispatch
> to be on the look-out for this car and, in fact, that … was
> done and the Defendant was arrested.

> So this was a -- a rather quick investigation resulting in the
> arrest or detention of Mr. Biddle within an hour, as I say.
> … Standing alone, … that would bring it within the …
> period of time which would make a show-up not unlawful
> or unduly suggestive….

> But adding to the -- the strength of the propriety of this
> procedure is the time that the [victim] spent with the
> Defendant. She calls in at 6:30. -- I don't know exactly or
> if she ever said what time that the carjacking occurred but
> if it -- if it begins in Atlantic City, it goes to Pleasantville,
> he - there's a stop, he makes her get undressed [and
> redressed], they drive back to Atlantic City. A minimum of
> 15 minutes each way to -- to Pleasantville and Atlantic
> City is a half hour, she's probably in his sight or he's in her
> sight for 45 minutes.

> … She's in a car with him. He's holding a knife to her, he's
> telling her to get undressed.

And she spent a good deal of time with him.  And so, that adds to the -- I think, the propriety of the show-up….

Now, … Detective Aristizabal testified … I think he put it in the most innocuous terms he could have and that is that now, … we have someone or we've detained someone who may possibly be involved in crimes. Certainly that statement says nothing more to a victim than the fact of the person being present in the station house itself, which logic would dictate, the police have a possible suspect.

So, … probably there was as little suggestibility with that conduct as there was with him telling her that there is a possible suspect they'd like her to look at.

I agree with the Prosecutor that even [if one] could find that this procedure was impermissibly suggestive, that the totality of circumstances as I have outlined most cogently, the time that – she spent with him, likely would override or supercede[], or overcome any suggestibility and would virtually, I think, make very unlikely that there was a misidentification here.

(Ex. 3, Dkt. No. 26-4 at 47-48.)

### 3.  Analysis

Petitioner has not identified, nor has this Court found, a Supreme Court case with materially indistinguishable facts that would permit review under the "contrary to" clause of § 2254(d)(1).  Habeas review, therefore, is of the state court's factual determinations, which are presumed correct absent clear and convincing evidence to the contrary, and whether the Appellate Division's determination of the claim involved an unreasonable application of *Biggers* and *Manson*.

When "a single individual arguably fitting a witness's description is presented to that witness for identification[,] … it suggests that the police think they have

caught the perpetrator of the crime[.]"   *United States v. Brownlee*, 454 F.3d 131, 138

(3d Cir. 2006) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).  This type of

"show-up" procedure, which was used in this case, is inherently suggestive by its

nature.  *Id.*  Therefore, determining admissibility of the out-of-court identification at

trial required consideration of the reliability factors.

     The Appellate Division adopted the trial court's analysis of the reliability

factors.  The trial court was swayed primarily by the amount of time the victim spent

with the perpetrator, approximately 45 minutes, and the short period of time between

the commission of the crime and the identification, approximately an hour.

Petitioner has raised a number of factors not discussed by the trial court or Appellate

Division.

     First, Petitioner contends the trial court erred because N.A. did not testify

about her out-of-court identification at the preliminary hearing, depriving him of the

opportunity to cross-examine her.  Petitioner has not cited a Supreme Court case that

held due process requires a victim to testify at a pretrial hearing on admissibility of

an out-of-court identification, nor can this Court find such a case.  State law

requirements for such hearings are not applicable on habeas review.  *See Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991) (state law claims are not cognizable on federal

habeas review).

     Petitioner's underlying concern about N.A.'s out-of-court identification is that

the trial court, in making its admissibility determination, did not have the benefit of

her testimony under cross-examination.  At trial, defense counsel asked N.A. about

her ability to see the perpetrator.

> Q.  … Where did you first see this person?
>
> A.  From around the trunk of the car.
>
> Q.  … it was, in fact, dark outside?
>
> A.  … it was night outside but there was lighting around.
>
> Q.  The person had their hood up?
>
> A.  Yes.
> . . .
> Q.  And what was the first thing you noticed about the person? … I mean about their appearance?
>
> A.  He had facial hair.  He had a hood over his face.

(Ex. 5, Dkt. No. 26-6 at 52-53.)

> Q.  … Now, when you are driving the car, isn't it true that your focus would primarily be on your sister, correct?
>
> A.  Correct.

(*Id.* at 59.)

> Q.  Didn't you tell the police that -- in your statement that you thought the person was about 25 years-old?
>
> A.  I said about 25, 30.

(*Id.* at 62.)

On redirect examination, N.A. testified that when she first saw the defendant,

she was able to see his face.  (*Id.* at 63.)  N.A. also testified that she took time to look

at the defendant's face when she made the identification in the police station that

16

night.  (*Id.* at 64.)  She confirmed that she recognized that person as the defendant.  (*Id.*)  The defense did not re-cross N.A. on this testimony.  (*Id.* at 64-65.)

It was not unreasonable for the trial court and Appellate Division to determine, based on the *Biggers*' reliability factors, that there was not a likelihood of misidentification from the out-of-court identification procedure.  N.A. spent approximately 45-minutes with Petitioner in close contact and the jury could reasonably infer she had an opportunity to see his face from different angles.  Although N.A. acknowledged at trial that the perpetrator had his hood up, she also said the first thing she noticed was his facial hair.  It was not unreasonable for the trial court to conclude that the victim who was carjacked and forced to take off her clothes at knifepoint by a man in the passenger seat, who was in her presence for an approximate 45 minutes of time ("a good deal of time") would remember the man's face one hour later ("she's probably in his sight or he's in her sight for 45 minutes").  Habeas relief is appropriate only when no fair-minded jurist would agree with the state court's determination.  Petitioner has not met that standard.

Even assuming a due process violation, habeas courts must apply harmless error review.  Here, admission of N.A.'s out-of-court identification did not have a substantial and injurious effect on the jury's verdict because Petitioner was arrested thirty minutes after the carjacking, when an officer saw him getting out of a car matching the description and license plate number provided by the victim, and holding a woman's bag.  When the officer searched Petitioner, he had N.A.'s underwear, her bag, and a knife matching the description she gave.  Then, Petitioner

confessed.  This evidence was sufficient to support the jury's finding of Petitioner's

guilt beyond a reasonable doubt, absent evidence of Petitioner's out-of-court

identification.  *See, e.g.*, United States v. Clausen, 328 F.3d 708, 714 (3d Cir. 2003)

(finding that, even if the out-of-court identification was impermissibly suggestive,

corroborating evidence of the defendant's commission of the crime rendered

admission of the testimony harmless error.)  Therefore, the Court denies Ground

One of the amended petition.

### C.  Ground Two:  Jury Instruction on the Right to Remain Silent

In Ground Two of the amended petition, Petitioner claims the trial court

violated his right to due process by instructing the jury:

> [a]s you may know, Mr. Biddle elected not to testify
> during his trial.  It is his constitutional right to remain
> silent.  You must not consider, for any purpose, or in any
> manner in arriving at your verdict, the fact that he chose
> not to testify.  That fact should not enter into your
> deliberations or discussions in any manner at any time.
> He is entitled to have the jury consider all evidence
> presented at trial.  **He is presumed innocent, even if he
> chooses not to testify.**

(Am. Pet., Dkt. No. 19 at 14-15) (emphasis in original).  The New Jersey model jury

charge was amended in 2009 to replace the word "even" with the words "whether or

not[.]"  Petitioner contends that this establishes the jury instruction was

constitutionally invalid.

In opposition to relief on Ground Two of the amended petition, Respondents

argue the instruction clearly conveyed to the jury that they could not draw an

adverse inference against Petitioner because he did not testify at trial.  (Answer, Dkt.

No. 26 at 8-9.)  Petitioner did not address this claim in his reply brief.  (Reply Brief, Dkt. No. 38 at 15.)

### 1.  Highest Reasoned State Court Determination of the Claim

In January 2011, the Appellate Division denied this claim on direct appeal because the change in New Jersey's Model Jury Instruction, replacing the word "even" in the last sentence with the phrase "whether or not", was simply an improvement, not an indication that use of the word "even" violated a defendant's right to remain silent.  (Ex. 11, Dkt. No. 26-12 at 12.)

### 2.  Clearly Established Supreme Court Precedent

In January 2009, the Supreme Court, in *Waddington v. Sarausad*, 555 U.S. 179 (2009), discussed habeas review of a challenge to a state court jury instruction.  A "defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."  *Id.* at 190-91 (quoting *Estelle*, 502 U.S. at 72  (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).  The jury instruction may not be considered in isolation, it must be considered as a whole and in context of the trial record.  *Id.* at 191 (quoting *Estelle*, *supra*, at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[A] slight possibility that the jury misapplied the instruction is not enough, the standard is "'whether the ailing instruction by itself so infected the entire trial that the resulting

conviction violates due process.'" *Id.* (quoting *Estelle, supra,* at 72) (quoting *Cupp, supra,* at 147).

### 3.  Analysis

The trial court instructed the jury that a defendant is presumed innocent "even if he chooses not to testify."  Whether considered alone or in context of the entire instruction, this falls far short of a due process violation.  The trial court instructed the jury that a defendant has a constitutional right to remain silent and  "[y]ou must not consider, for any purpose, or in any manner in arriving at your verdict, the fact that he chose not to testify.  That fact should not enter into your deliberations or discussions in any manner at any time."  (Ex. 7, Dkt. No. 26-8 at 35.)  The Appellate Division's denial of this claim on direct review involved a reasonable application of clearly established Supreme Court precedent.  Thus, the Court denies Ground Two of the amended petition.

### D.  Ground Three:  Confrontation Clause

Petitioner alleges the State violated his Sixth Amendment right to Confrontation because the State introduced lab report findings to prove the substance confiscated from him was heroin, but the lab technician who performed the tests did not testify.  (Am. Pet., Dkt. No. 19 at 16-17.)  Without establishing that the lab technician who performed the test was unavailable to testify, the State introduced the lab report by having the custodian of the drug room from police headquarters read the findings of the lab report before the jury.

In opposition to habeas relief on Ground Three of the amended petition, Respondents argue Petitioner failed to preserve his Confrontation Clause claim under N.J.S.A. 2C:35-19, the purpose of which is to "protect the defendant's constitutional rights and yet relieve the prosecution of producing the analyst when scientific proof *is not a contested issue* in the case." (Answer, Dkt. No. 26 at 10, quoting *State v. Miller*, 170 N.J. 417, 430 (2002) (emphasis in original) (citation and internal quotations omitted in Answer). Petitioner did not address Ground Three of the amended petition in his reply brief. (Reply Brief, Dkt. No. 38 at 15.)

## 1. Highest Reasoned State Court Determination

In January 2011, on direct appeal, the Appellate Division denied this claim [Point V in the state court brief] as "clearly without merit." (Dkt. No. 26-12 at 8.) Therefore, this Court must determine what arguments or theories could have supported the Appellate Division's decision, and apply deference to the decision. *Richter*, *supra*, at 102.

## 2. Clearly Established Supreme Court Precedent

In June 2009, the Supreme Court held that lab analysts' affidavits, when presented "to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance," were testimonial statements subject to the Sixth Amendment Confrontation Clause. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (citations omitted). Therefore, "[a]bsent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine, petitioner was entitled to 'be confronted with' the analysts at trial." *Id.*

21

(quoting *Crawford*, *supra*, at 54)).  The majority in *Melendez-Diaz* addressed the

dissent's prediction of dire consequences arising from this holding:

> [t]he defendant always has the burden of raising his
> Confrontation Clause objection; notice-and-demand
> statutes simply govern the time within which he must do
> so. States are free to adopt procedural rules governing
> objections. *See Wainwright v. Sykes*, 433 U.S. 72, 86–87
> (1977). It is common to require a defendant to exercise his
> rights under the Compulsory Process Clause in advance of
> trial, announcing his intent to present certain witnesses. …
> There is no conceivable reason why he cannot similarly be
> compelled to exercise his Confrontation Clause rights
> before trial. *See Hinojos–Mendoza v. People*, 169 P.3d 662,
> 670 (Colo. 2007) (discussing and approving Colorado's
> notice-and-demand provision). Today's decision will not
> disrupt criminal prosecutions in the many large States
> whose practice is already in accord with the Confrontation
> Clause.

*Melendez-Diaz*, 557 U.S. at 327 (citations omitted).

### 3.  Analysis

At the time of Petitioner's trial, New Jersey had a similar notice and demand

statute to that described by the Supreme Court in *Melendez-Diaz*.  N.J.S.A. 2C:35-

19(c), effective June 28, 1988, provides:

> [w]henever a party intends to proffer in a criminal or
> quasi-criminal proceeding, a certificate executed pursuant
> to this section, notice of an intent to proffer that certificate
> and all reports relating to the analysis in question,
> including a copy of the certificate, shall be conveyed to the
> opposing party or parties at least 20 days before the
> proceeding begins. An opposing party who intends to
> object to the admission into evidence of a certificate shall
> give notice of objection and the grounds for the objection
> within 10 days upon receiving the adversary's notice of
> intent to proffer the certificate. Whenever a notice of
> objection is filed, admissibility of the certificate shall be

> determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory for analysis will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate. The time limitations set forth in this section shall not be relaxed except upon a showing of good cause.

Petitioner does not claim, nor does the state court record suggest, that he satisfied the notice of objection requirement of N.J.S.A. 2C:35-19(c).  Therefore, pursuant to *Melendez-Diaz*, Petitioner waived his rights under the Confrontation Clause.  Because the Appellate Division's denial of this claim involved a reasonable application of clearly established Supreme Court precedent, the Court denies Ground Three of the amended petition.

### E.  Ground Four:  Due Process Violation for Failure to Provide Cross Racial Identification Instruction

Petitioner asserts in Ground Four of the amended petition that he is African-American and the victim is not.  He contends the trial court failed to provide a *sua sponte* cross-racial identification instruction, in violation of his right to due process. (Am. Pet., Dkt. No. 19 at 17-18.)  Respondents oppose relief, asserting Petitioner and the victim are black.  (Answer, Dkt. No. 26 at 11.)  Petitioner did not address Ground Four of the amended petition in his reply brief.  (Dkt. No. 38 at 15.)

### 1.  Highest Reasoned State Court Determination

On direct appeal, the Appellate Division rejected this claim as "clearly without merit." (Dkt. No. 26-12 at 8.)  Therefore, this Court must determine what arguments or theories could have supported the Appellate Division's decision and apply deference to the decision.  *Richter*, *supra*, at 102.

### 2.  Clearly Established Supreme Court Precedent

Petitioner has not identified, nor has this Court found, clearly established Supreme Court precedent requiring a court to *sua sponte* give a cross-racial identification jury instruction.  This, alone, is sufficient to deny Ground Four. However, the Court will briefly address the claim.

### 3.  Analysis

"A habeas petitioner who challenges state jury instructions must 'point to a federal requirement that [they] ... must include particular provisions' or demonstrate that the jury 'instructions deprived him of a defense which federal law provided to him.'"  *McMillan v. Bartkowski*, No. CIV. 11-1586 KM, 2013 WL 3043458, at *11 (D.N.J. June 14, 2013) (quoting *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997)).  Petitioner has not identified federal law that requires a cross-racial identification jury instruction, nor has he attempted to demonstrate how the jury instructions deprived him of a constitutional right.  Therefore, Petitioner has failed to establish a basis for habeas relief.  The Court will deny Ground Four of the amended petition.

### F.  Ground Five of the Amended Petition:  Prosecutorial Misconduct in Violation of Due Process

Petitioner accuses the prosecutor of misconduct because she played only the portion of the 9-1-1 call to the jury, permitting the jury to hear N.A. crying hysterically. (Am. Pet., Dkt. No. 19 at 19.) Petitioner argues that if the prosecutor had played the entire recording, the jury would have heard that N.A. described the perpetrator as wearing a hoodie, and she could not see his face. Based on this evidence, Petitioner contends Detective Aristizabal falsely testified that the victim made a positive out-of-court identification of the defendant on October 30, 2006, and the prosecutor failed to correct this testimony by revealing N.A.'s statement to Officer Rando that the perpetrator had a hood on, and she could not see his face.[3]

Petitioner also submits that the victim's description of the perpetrator was inconsistent with his height, age, and clothing. He contends the prosecutor had a duty to disclose to the court and jury "any prior or inconsistent and exculpatory statement from her own witness." Petitioner accuses the prosecutor of "skillfully misle[ading] and intentionally deceiv[ing] the jury by omission into believing that its witness [testified] truthfully and permitted the jury to draw the "inescapable inference" that the victim's alleged identification was reliable, independent, and trustworthy."

---

[3] Petitioner further asserts "the initial show-up for identification purposes was conducted at the location where the defendant was initially detained at, which, obviously resulted in a non-identification of the defendant at that time." (Am. Pet., Dkt. No. 19 at 19.) Petitioner did not cite to anything in the record that indicates there was any attempt to have N.A. identify defendant before he was arrested and placed in a room at the police station. The Court has reviewed the entire record and finds no such evidence. Therefore, the Court need not address this particular allegation of prosecutorial misconduct.

Respondents oppose relief on Ground Five of the amended petition.  (Answer, Dkt. No. 26 at 12.)  At trial, Petitioner objected to the admission of any portion of the 9-1-1 call on grounds that it was hearsay.  The trial court, however, ruled that the portion of the call where the victim told the dispatcher what happened to her, gave her name and spelled it, was admissible as an excited utterance.  (*Id.*, citing Ex. 5 at 3T3:10-14, Dkt. No. 26-6 at .)  The remainder of the conversation was testimonial within the meaning of the Confrontation Clause.  Respondents contend the trial court's ruling complied with the Confrontation Clause because the victim and the dispatcher were available to testify, and there was no prior opportunity to cross-examine either the victim or the dispatcher.  (Answer, citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.")

In his reply brief, Petitioner relies on three Supreme Court cases.  (Reply Brief, Dkt. No. 38 at 16 -20).  First, he argues that pursuant to *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959), and *Giglio v. U.S.*, 405 U.S 150, 153 (1972), a State violates a defendant's right to due process by knowingly presenting or failing to correct false testimony in a criminal proceeding.  Petitioner argues that a conviction obtained by knowing use of perjured testimony must be set aside if there is a reasonable likelihood that the false testimony could have affected the jury's verdict.  *United States v. Agurs*, 427 U.S. 97 (1976).  The same rule applies if the State allows false evidence to go uncorrected, even if it was not solicited by the prosecutor.  *Giglio*, 405 U.S. 150,

26

153 (1972).  Further, a conviction must be set aside if false testimony goes only to

witness credibility, and not the defendant's guilt.  *Napue v. Illinois*, 360 U.S. 270

(1959).

In his reply brief, Petitioner accuses the prosecutor of coaching the victim to

testify falsely about her identification of Petitioner.  (Reply Brief, Dkt. No. 38 at

Petitioner cites to the following exchange at trial:

> Q.  Were you able to see the person's face?
>
> A:  I was able to see his face and I was also able to see
> what he had on.
>
> Q.  Do you see that person in the courtroom today?
>
> A.  Yes, I do.
>
> Q.  Can you please point that person out?
>
> A.  That man right there (indicating).
>
> Q.  Can you tell the jury what that person's wearing?
>
> A.  He's wearing a mustard kind of suit.

(Reply Brief, Dkt. No. 38 at 16.)  Petitioner contends the Police Dispatch Transcript

indicates that Officer Leonard reported to the dispatcher that "male has a hood on

and she could not see his face."  Petitioner submits this establishes that the victim

knew her testimony about seeing the man's face was false.  (Reply Brief, Dkt. No. 38

at 17.)

Additionally, Petitioner points out that the prosecutor, at the pretrial hearing,

asked Officer Rando to read part of the 9-1-1 transcript, but had him stop before

27

reading where Officer Leonard said "male has a hood on and she could not see his face." (*Id.*) Petitioner concludes that this prosecutorial misconduct, which improperly influenced the jury's determination of the victim's identification, deprived him of a fair trial. (*Id.* at 18, 21.)[4]

### 1.  Highest Reasoned State Court Decision

On direct appeal, the Appellate Division denied the prosecutorial misconduct claim as "clearly without merit." (Ex. 11, Dkt. No. 26-12 at 8.) Therefore, this Court must determine what arguments or theories could have supported the Appellate Division's decision, and apply deference to the decision. *Richter*, *supra*, at 102.

### 2.  Clearly Established Supreme Court Precedent

The Supreme Court, in *Giglio v. United States*, discussed a defendant's due process right to a new trial after false evidence is presented to a jury. The Court explained, in relevant part:

---

[4] In his reply brief, Petitioner also accuses the prosecutor of deliberately submitting Officer Rando's false testimony that he did not find any controlled dangerous substance or related items in the defendant's possession upon his arrest. This is a new claim raised by Petitioner in his reply brief. "It is axiomatic that a party 'may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief.'" *McNeil v. Johnson*, No. CV 18-10003 (SDW), 2019 WL 3805118, at *1 (D.N.J. Aug. 12, 2019) (*D'Allessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (quoting *Int'l Raw Materials, Ltd. V. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n. 11 (3d Cir. 1992)). "The prohibition against raising new claims in a reply brief is 'especially applicable' in the habeas context" because a habeas petitioner must certify that he is aware he must raise all claims in a single habeas petition. *Id.* (quoting *Judge v. U.S.*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015). Petitioner made this certification in his amended habeas petition. (Am. Pet., Dkt. No. 19 at 27.) Therefore, the Court will not discuss this new factual basis for Petitioner's prosecutorial misconduct claim.

> As long ago as *Mooney v. Holohan*, 294 U.S. 103, 112, 55
> S.Ct. 340, 342, 79 L.Ed. 791 (1935), this Court made clear
> that deliberate deception of a court and jurors by the
> presentation of known false evidence is incompatible with
> 'rudimentary demands of justice.' This was reaffirmed in
> *Pyle v. Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214
> (1942). In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3
> L.Ed.2d 1217 (1959), we said, '(t)he same result obtains
> when the State, although not soliciting false evidence,
> allows it to go uncorrected when it appears.' *Id.*, at 269, 79
> S.Ct., at 1177. … When the 'reliability of a given witness
> may well be determinative of guilt or innocence,'
> nondisclosure of evidence affecting credibility falls within
> this general rule. *Napue*, *supra*, at 269, 79 S.Ct., at 1177.…
> A new trial is required if 'the false testimony could . . . in
> any reasonable likelihood have affected the judgment of
> the jury . . .' *Napue*, *supra*, at 271, 79 S.Ct., at 1178.

*Giglio v. United States*, 405 U.S. 150, 153–54 (1972).

In *Napue*, the Court held that where the prosecution failed to correct the State witness's known false testimony that he was not offered anything in exchange for his testimony at trial, where the false testimony may have had an effect on the outcome of the trial, the defendant's right to due process was violated.  *Napue*, 360 U.S. at 271, 72.  In the Third Circuit, to establish a *Napue/Giglio* violation, a petitioner must show that:  1)  perjury was committed; (2)  the prosecution knew or should have known of the perjury; (3) the testimony went uncorrected; and (4) the testimony was material; in other words, there was a reasonable likelihood the false testimony could have affected the verdict.  *Lambert v. Blackwell*, 387 F.3d 210, 242–43 (3d Cir. 2004).

### 3. Analysis

At trial, defense counsel confirmed she had a copy of the transcript of the 9-1-1 call, but she objected to its admission based on hearsay.  (Ex. 5, Dkt. No. 26-6 at 2.) This is not a situation where the prosecutor failed to disclose an inconsistent statement, the defense had the 9-1-1 transcript.

The question is whether the prosecutor knew N.A.'s trial testimony, that she saw Petitioner's face and could identify him, was false.  First, it was Officer Leonard, not N.A., who told the dispatcher the victim could not see the perpetrator's face.  It is reasonable to infer Officer Leonard had not heard N.A.'s entire story when he reported this to the dispatcher.  Based on N.A.'s trial testimony, that the perpetrator sat next to her in her car and pointed a knife at her, and that he rode in the car with her for 45 minutes, it is reasonable to infer that Officer Leonard was describing only the victim's initial encounter with the perpetrator on the street.  Second, even if Petitioner kept his hood up throughout the 45-minute carjacking, the prosecutor could have reasonably inferred N.A. saw Petitioner's face during their encounter. The record provides a reasonable basis for the Appellate Division to summarily reject Petitioner's claim of prosecutorial misconduct.

Moreover, if the prosecutor erred by failing to present N.A.'s alleged inconsistent statement to Officer Leonard from the police dispatch transcript, the error did not have a "substantial and injurious effect or influence" on the jury's verdict.   The jury heard evidence of the circumstances of Petitioner's arrest and his confession to the crimes, consistent with N.A.'s description of the events.  This

evidence supported the jury's conclusion of Petitioner's guilt beyond a reasonable doubt in the absence of any testimony about N.A.'s identification of Petitioner.  The Court denies Ground Five of the amended petition.

### G.  Ground Six:  Admission of Partial 9-1-1 Call Transcript Violated Due Process Right to a Fair Trial

In Ground Six of the amended petition, Petitioner contends that the trial court's exclusion of the majority of the recording of the victim's 9-1-1 call violated his due process right to a fair trial because the jury was not permitted to hear evidence the defense could have used to impeach the victim's identification.  (Am. Pet., Dkt. No. 19 at 20-21.)  Respondents oppose relief because Petitioner objected to the admission of the 9-1-1 call on grounds that it was hearsay.  (Exhibit 5, transcript of trial, 5/20/08, 3T3:10-14).  The trial court ruled that the portion of the 9-1-1- call "up to...where [the victim] gives her name and spells it" was admissible under the excited utterance exception to the hearsay rules.  The remainder of the conversation, where the dispatcher began to ask the victim questions, was akin to the beginning of the investigation, and therefore, was excluded as inadmissible hearsay.

In opposition to habeas relief, Respondents contend this ruling complied with the Sixth Amendment's Confrontation Clause because the victim and the dispatcher were available to testify, and there was no prior opportunity to cross-examine. (Answer, Dkt. No. 26 at 12, citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior

opportunity to cross-examine.")  Petitioner did not address this issue in his reply
brief.  (Reply Brief, Dkt. No. 38 at 21.)

### 1. Highest Reasoned State Court Decision

The Appellate Division rejected this claim as "clearly without merit" on direct
appeal.  (Ex. 11, Dkt. No. 26-12 at 8.)  Therefore, pursuant to *Richter*, *supra*, this
Court must determine what arguments or theories could have supported the
Appellate Division's decision and apply deference to that decision.

### 2. Clearly Established Supreme Court Precedent

Petitioner has not identified, and this Court is unaware of, Supreme Court
precedent holding that due process is violated when a trial court sustains the
defense's hearsay objection and excludes evidence that the defendant then claims, on
habeas review, should have been admitted.  This Court will, nonetheless, address
Petitioner's claim under the general due process standard for admissibility of
evidence.  State evidentiary rulings constitute a federal due process violation only
where a petitioner can show the evidentiary ruling was so unfair as to deprive the
defendant of a fundamentally fair trial.  *Dowling v. United States*, 493 U.S. 342, 352
(1990).

### 3. Analysis

Petitioner was not deprived of a fundamentally fair trial when the trial court
sustained in part his hearsay objection to the 9-1-1 transcript/recording offered by the
State.  The parties conceded the transcript contained hearsay.  (Ex. 5, Dkt. No. 26-6
at 2.)  Moreover, defense counsel cross-examined N.A. at trial about the

perpetrator's appearance on the night of the carjacking.  (*Id.* at 52.)  The defense did

not attempt to impeach N.A.'s testimony about her ability to see Petitioner's face

under N.J. Rule of Evidence 803(a)(1) with her prior inconsistent statement to

Officer Leonard on the 9-1-1 call.  *See State v. Baluch*, 775 A.2d 127, 151 (N.J. Super.

Ct. App. Div. 2001) (discussing application of hearsay exception for prior

inconsistent statement).  For these reasons, and the harmless error discussion above,

the Appellate Division's summary denial of this claim as meritless did not involve an

unreasonable application of clearly established Supreme Court precedent.  Therefore,

this Court denies Ground Six of the amended petition.

### H.  Ground Seven:  Lack of Probable Cause to Arrest in Violation of the Fourth Amendment

Petitioner alleges he was unlawfully seized on October 30, 2006, in violation

of the Fourth Amendment, based on a false warrant indicating that the victim had

identified him.  (Am. Pet., Dkt. No. 19 at 22-23.)  Petitioner alleges Detective

Aristizabal signed the arrest warrants on behalf of the victim, and the victim never

appeared before a judicial officer to swear to the contents of her complaint under

oath.

In response to Ground Seven of the amended petition, Respondents assert

Petitioner failed to raise a cognizable habeas claim.  (Answer, Dkt. No. 26 at  12-13.)

Petitioner did not address this claim in his reply brief.  (Reply Brief, Dkt. No. 38 at

8.)

### 1.  Highest Reasoned State Court Decision

The Appellate Division rejected this claim as "clearly without merit" on direct appeal.  (Ex. 11, Dkt. No. 26-12 at 12-13.)  Therefore, this Court must determine what arguments or theories could have supported the Appellate Division's decision and apply deference to the decision.  *Richter*, *supra*, at 102.

### 2.  Clearly Established Supreme Court Precedent

"[I]n *Stone v. Powell*, 428 U.S. 465 [] (1976), the Court removed from the purview of federal habeas court challenges resting on the Fourth Amendment, where there has been a full and fair opportunity to raise them in the state court." *Wainwright v. Sykes*, 433 U.S. 72, 79–80 (1977).

### 3.  Analysis

Petitioner has not alleged that he was not given a full and fair opportunity to challenge his arrest warrant in the state courts.  Thus, Petitioner may not assert a Fourth Amendment challenge on habeas review, and the Court denies Ground Seven of the amended petition.

## I.  Ground Eight:  Ineffective Assistance of Trial Counsel for Failing to Convince Petitioner to Accept the State's Plea Offer

In Ground Eight of the amended petition, Petitioner asserts his trial counsel was ineffective by not convincing him to accept the State's plea offer of 25-years imprisonment with 85% parole ineligibility.  (Am. Pet., Dkt. No. 19 at 24.)  In support of this claim, Petitioner asserts "the defendant is maintaining that he was misadvised and lead astray by his attorney, as a result of which he rejected the plea

offer and instead proceeded to trial….” (*Id.*)  Petitioner alleges he was prejudiced because his sentence after trial was approximately 15-years longer than the plea recommendation.

Respondents oppose relief on Ground Eight of the amended petition because the trial record supports a finding that defense counsel advised Petitioner the State had a strong case against him, and that he was facing life in prison without parole, but Petitioner made the choice to go to trial.  (Answer, Dkt. No. 26 at 13-16, citing Ex. 4, 2T9:21 – 10:11.)

In his reply brief, Petitioner argues, for the first time on habeas review, that the PCR court never ruled on the conditional plea issue raised by his PCR counsel. (Reply Brief, Dkt. No. 38 at 23.)  He further states that if his trial counsel had advised him that he could have pled guilty and reserved the right to appeal denial of his pretrial motions, he would have done so.  (*Id.*)  Petitioner asserts that he asked his counsel to propose counteroffers to the State, but his counsel told him the State would not be willing to accept his counteroffers.  (*Id.* at 24-25.)

“It is axiomatic that a party ‘may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief.’” *McNeil*, *supra* n. 5.  Therefore, the Court will not address the new factual basis for Petitioner’s ineffective assistance claim, raised for the first time in his reply brief.[5]

---

[5] Moreover, Petitioner’s new claim in his reply brief would fail on the merits.  The findings of fact by the Appellate Division on PCR appeal, discussed below, establish that Petitioner rejected the State’s plea offer on the first day of trial, after time for discussion with his counsel, and the prosecution was ready to proceed, with a strong case for conviction. There

### 1.  Highest Reasoned State Court Decision

The highest reasoned state court determination of this claim was by the

Appellate Division on PCR appeal.  (Ex. 20, Dkt. No. 26-21.)  On August 22, 2014,

the Appellate Division determined, in relevant part:

> Defendant had been convicted of robbery on two previous
> separate occasions. Accordingly, if convicted of any of the
> carjacking or robbery counts, he would receive a
> mandatory sentence of life imprisonment without parole
> under the "Three Strikes Law," N.J.S.A. 2C:43-7.l(a). He
> nonetheless rejected a plea offer of twenty-five years in
> prison, with an 85% period of parole ineligibility under the
> No Early Release Act, N.J.S.A. 2C:43-7.2.
>
> Defendant moved to suppress the physical evidence, his
> statements, and N.A.'s identification.  Immediately after
> the trial court denied his suppression motions, the
> following exchange occurred:
>
>> THE COURT:  I don't recall what the last
>> offer in this case was.
>>
>> [THE PROSECUTOR]:  It was 25 at 85,
>> Your Honor.
>>
>> THE COURT:  Twenty-five at 85?  That's
>> still on the table?
>>
>> [THE PROSECUTOR]:  Yes, Your Honor.
>>
>> THE COURT:  Is there any reconsideration
>> of the rejection of that today, [trial counsel]?
>>
>> [TRIAL COUNSEL]:  Well, I'm - I'm going
>> to need to talk to my client again and then ...
>> did you just say something to me?

is nothing in the record to suggest the State would have offered a conditional plea [or
accepted a counter-offer initiated by the defense], which precludes a showing of prejudice.

> (Discussion among Defense Counsel and the
> Defendant, off the record)
>
> [TRIAL COUNSEL]: He - well, he's
> indicating that he still wants to go to trial,
> Judge.

The court acknowledged defendant's rejection of the plea
offer, and set a trial date.

On the first day of trial, defendant asked to speak to the
court to explain why he wanted to go to trial with a new
attorney, despite facing a life sentence: "this is my life on
the line.  I understand I put my life on the line, you know,
and I understand the type of time that I'm facing . . . I'm
convicted . . in the jury trial is life without I understand
that."  After a recess, and after another discussion between
defendant and trial counsel, counsel stated:

> Judge, earlier Mr. Biddle and I had
> conversations with regard to a potential plea
> offer and he was before the Court.  First of
> all, [] I do want to put on the record, I asked
> Mr. Biddle to consider the plea that was
> offered by the State.  [H]e knows all along
> that I've said that the case I felt [in] my legal
> opinion is very strong against him. [W]e had
> motions and we know that [] certain evidence
> is going to come into the trial and for that
> reason I asked him to seriously consider the
> plea offer. I thought it was in his best interest
> since he is ultimately facing life in prison
> without the possibility of Parole.
>
> He's chosen to go to trial and that's [] his call,
> it's his life.

Accordingly, defendant went to trial. The jury found
defendant guilty of all the counts detailed above. On
August 29, 2008, the trial court sentenced defendant to
three concurrent extended terms of life imprisonment
without eligibility for parole for the three carjackings, with
concurrent terms for the remaining offenses. We affirmed

defendant's convictions and life sentences, and remanded to correct the sentences for the remaining offenses. *State v. Biddle*, No. A-1656-08 (App. Div. Jan. 10, 2011), *certif. denied*, 206 N.J. 330 (2011).

…

At oral argument, the PCR judge made clear he had read both defendant's pro se petition and PCR counsel's plea issue. The court agreed that defendant was offered "a pretty good plea agreement. But he was adamant he wanted to go to trial." The court noted that, despite defendant's concession and N.A.' s identification, "he wanted his day in court. And he got it." The court found:

> His attorney did the best she could do with what was given to her. And the fact is [it] was the defendant's decision to go to trial, knowing the tremendous facts against him and in light of the fact that his attorney indicates in the papers given to me that she advised him don't go to trial. It's a tough case to win. I'm paraphrasing. Don't go to trial. But, Mr. Biddle, he wanted to go to trial.

… the court observed that Defendant's ineffectiveness claims were meritless, and that his "judgment clearly has to be called into question" both because his behavior and because "he was offered a pretty good deal" but rejected it. The PCR court concluded that, considering "all of the points made by the defendant, there is not one that even comes close to having this Court feel that his attorney" was deficient or that defendant was prejudiced, and denied the PCR petition without an evidentiary hearing.

. . .

Defendant argues that the PCR court addressed the twenty-two claims of ineffectiveness in his pro se petition, but did not address PCR counsel's claim that trial counsel was ineffective for failing to obtain a negotiated guilty plea. However, as set forth above, the PCR court addressed that claim, finding trial counsel was not ineffective because she had negotiated "a pretty good plea agreement" and had advised defendant to take it, "[b]ut he was adamant he wanted to go to trial" despite the damning evidence.

38

> As the PCR court recognized, the decision whether to plead guilty or go to trial belongs to defendant, not his counsel.  A defendant "has 'the ultimate authority' to determine 'whether to plead guilty[.]'" *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 560, 160 L. Ed. 2d 565, 578 (2004). "While a guilty plea may be tactically advantageous for the defendant, the plea is not simply a strategic choice; it is itself a conviction.'" Ibid. Accordingly, counsel lacks authority to consent to a guilty plea on a client's behalf[,]" ibid. and a plea "bargain cannot be imposed upon a defendant," *State v. Williams*, 277 N.J. Super. 40, 46 (App. Div. 1994).  Thus defendant cannot blame trial counsel for defendant's own choice to go to trial.

(Dkt. No. 26-21 at 4-11.)

The Appellate Division further noted that Petitioner's case bore no resemblance to the Supreme Court decision in Lafler, where the parties conceded that defense counsel's advice *to reject the plea offer* was deficient.  (*Id.* at 12) (emphasis added).  Here, trial counsel advised Petitioner to accept the plea offer because the State's case was strong and Petitioner was facing a life sentence without parole.  (*Id.*)  Petitioner failed to show his counsel's performance was deficient.  (*Id.*)  Petitioner also failed to proffer that he would have accepted a plea offer rather than going to trial.  (*Id.* at 13.)  The Appellate Division found no reason to believe Petitioner would have accepted a twenty-five year sentence rather than hoping for an acquittal at trial.  (*Id.* at 14.)

## 2. Clearly Established Supreme Court Precedent

To establish ineffective assistance of counsel, a defendant must satisfy two prongs, deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To establish prejudice, "the defendant must show that here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In *Hill v. Lockhart*, the Supreme Court held that the same two-part standard for ineffective assistance of counsel claims announced in *Strickland* applies to ineffective assistance claims arising out of the plea process. 474 U.S. 52, 57-58 (1985). "[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In a later Supreme Court case, the Court held that where ineffective advice of counsel led to rejection of a plea offer, the prejudice prong of *Strickland* required the defendant

> "to show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been provided to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed."

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

### 3. Analysis

The Appellate Division applied the correct standard in determining Petitioner's Sixth Amendment ineffective assistance of counsel claim. Therefore, on habeas review, "[t]he question is not whether counsel's actions were reasonable … but whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Here, trial counsel urged Petitioner to accept the State's plea offer. This was reasonable advice based on the strength of the State's case. Petitioner refused this reasonable advice on the record on the first day of trial. Thus, Petitioner has not established that the Appellate Division's denial of his PCR appeal was contrary to or involved an unreasonable application of the *Strickland/Lafler* standards for ineffective assistance of counsel in plea bargaining.

## IV. CERTFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. For the reasons discussed above, reasonable jurists would not find denial of

the habeas petition debatable or the issues deserving encouragement to proceed further.  Accordingly, no certificate of appealability shall issue.

## IV.    CONCLUSION

Petitioner has not established his burden to obtain habeas relief.  Therefore, the Court will deny the habeas petition, and no certification of appealability shall issue.

An appropriate Order follows.

**Date:  March 19, 2024**

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge